Filed 6/28/22  In re S.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | B312287 (Los Angeles County Super. Ct. No. 20CCJP05546A, B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.R. et al.,<br><br>        Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant J.R.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant J.M.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephanie Jo Reagan, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

Mother J.R. appeals from the juvenile court's jurisdictional and dispositional orders over her children S.M. and P.R. Father J.M. appeals only from the orders regarding S.M. We affirm.

The parties are familiar with the facts and procedural history, and our opinion does not meet the criteria for publication. (Cal. Rules of Court, rule 8.1105(c).) We therefore resolve this appeal by memorandum opinion pursuant to Standard 8.1 of the Standards of Judicial Administration and consistent with constitutional principles (Cal. Const., art. VI, § 14 ["Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated"]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1263 [three-paragraph discussion of issue on appeal satisfies constitutional requirement because "an opinion is not a brief in reply to counsel's arguments. [Citation.] In order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"]).

# II. DISCUSSION

A.    *Father's Appeal*

Father purports to join mother's arguments "as they apply to [him]." "Joinder may be broadly permitted (Cal. Rules of Court, rule 8.200(a)(5)), but each appellant has the burden of demonstrating error and prejudice (*People v. Coley* (1997) 52 Cal.App.4th 964, 972 . . . ; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 . . . ['Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice[]'][.])[  ]"  (*People v. Nero* (2010) 181 Cal.App.4th 504, 510, fn. 11.)  Because father has not "spelled out" how mother's arguments apply to him, his "joinder" is deficient.

Moreover, mother does not challenge the juvenile court's sustaining of count b-4 as to S.M., which alleged that father's 17-year history of substance abuse and frequent use of methamphetamine placed the child at risk of physical and emotional harm.  "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'"  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  Accordingly, even if father had effectively joined mother's arguments, we

would not consider the merits of those arguments as they apply to him.

B.    *Mother's Appeal*

1.    <u>Jurisdictional Orders</u>

Although mother does not challenge the juvenile court's sustaining of count b-4, because the jurisdictional findings regarding the counts she does challenge on appeal serve as the basis for the dispositional orders on appeal, we will consider the merits of mother's arguments.  (*In re J.C.* (2014) 233 Cal.App.4th 1, 4.)  Mother contends there was insufficient evidence to support counts b-1, b-2, and b-3 of the petitions.  Because we can affirm the juvenile court's finding of jurisdiction over the children if any of the statutory bases for jurisdiction is supported by substantial evidence (*In re I.J.*, *supra*, 56 Cal. 4th at p. 773), we will focus our discussion on counts b-1 and b-3.

In sustaining count b-1, the juvenile court found that the parents' domestic violence posed a substantial risk the children would suffer serious physical harm or illness as a result of the failure or inability of mother to adequately protect them.  (Welf. & Inst. Code, § 300, subd. (b)(1).)[1]  The record demonstrates the parents had a long history of engaging in domestic violence.  In September 2015, a caller reported to the Los Angeles County Department of Children and Family Services (the Department) that father, while holding S.M., slapped mother numerous times. Father told the caller that mother hit him first.  In July 2019, a

_____

[1]    Further undesignated statutory references are to the Welfare and Institutions Code unless otherwise stated.

4

caller telephoned the police to report that a man and woman from maternal grandmother's address (at which mother lived) could be heard yelling and fighting over child custody and a "5-6 year old was heard crying while on the line."  In May 2020, a caller reported to the Department that one or two years prior to the call, father hit mother in the face and it was not the first time he had done so.  And, father had sustained the following relevant convictions:  a 2016 conviction for violating a court order to prevent domestic violence and a 2018 conviction for spousal battery.[2]

Mother also engaged in acts of abuse against father, namely, vandalism and disturbing his peace.  (Fam. Code, §§ 6203, 6320.)  Father and his supervisor called the police four times in 2020 to complain that mother was causing a disturbance at father's work.  Father reported to a social worker that mother would get angry and come to his place of work to break things.  Father's supervisor reported that mother regularly came to father's workplace with S.M. and complained about father.  On one occasion, mother broke the supervisor's car window and directed S.M. to scratch the car.  S.M. confirmed going to father's workplace with mother but denied domestic violence.  Despite this history, mother and father remained in a romantic relationship.

According to mother, because she and father were "not currently [in] a domestic violence relationship" and the prior instances of domestic abuse were "remote," we should reverse the

---

[2]    In 2020, father sustained a conviction for violating a protective order but the record suggests that maternal grandmother and not mother was the subject of that protective order.

5

juvenile court's sustaining of count b-1. We disagree. Given the record of the parents' acts of abuse against one another, father's history of violating protective orders, and the parents' ongoing relationship, there was sufficient evidence to find a substantial risk of harm to the children. "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child currently needs the court's protection. [Citation.] A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue."' (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383–1384.) Substantial evidence supports the juvenile court's sustaining of count b-1.

Regarding count b-3, which alleged that mother's mental and emotional problems caused her to engage in acts of aggression against maternal relatives and at father's place of business, mother denies having emotional or mental problems. Substantial evidence supports the jurisdictional finding.

Mother had a history of acting aggressively toward maternal relatives. In May 2019, maternal grandmother telephoned the police to report that mother had thrown a rock at maternal grandfather. In July 2019, maternal grandfather called the police about a dispute with mother. In December 2019, a caller telephoned the Department to report that mother was physically and verbally abusive to maternal grandmother. A few days earlier, mother struck maternal cousin with a broomstick while he slept on the sofa. In March and April 2020, maternal

6

grandmother called the police to report a dispute between her and mother, among others. On July 28, 2020, a caller reported to the Department that mother was in a dispute with her family members and had called them names, swore at them, and swung at them with her hands. Such conduct occurred in front of S.M. Mother admitted to a social worker that she was engaged in a conflict with the maternal cousin and the social worker observed maternal grandmother yell that mother had hurt her. S.M. also told the social worker that mother and maternal cousin had engaged in a fight, which she stated maternal cousin had started. Maternal aunt was concerned that mother had verbal conflicts with everyone in her home and in S.M.'s presence and believed that mother needed to manage her anger. Maternal cousin described mother as verbally abusive to everyone in the home and reported that mother screamed at someone in the home and engaged in fights daily. Mother, however, claimed that the Department was trying to remove S.M. based on "gossip."

In 2015, father told a social worker that he was concerned about mother's mental health and described mother as bipolar, having mood swings, and being verbally, mentally, and physically abusive to maternal grandmother and father. Father repeated his belief that mother had bipolar disorder in January 2021. Father also confirmed that there were several altercations between mother and maternal family members. Further, and as discussed more fully above, father's supervisor reported mother's acts of aggression at father's workplace, which took place in S.M.'s presence.

We reject mother's assertion that her attendance at three anger management classes demonstrated she had sufficiently addressed her mental health concerns such that count b-3 was

7

not supported by sufficient evidence.[3]  At the time of the adjudication hearing, mother had enrolled in and paid for only three anger management classes.  Moreover, mother initially denied any mental or emotional problems and had not yet received a mental health evaluation.  Substantial evidence supports the jurisdictional finding for count b-3.

2.     <u>Removal Orders</u>

We next consider mother's challenge to the juvenile court's removal orders.  Section 361, subdivision (c)(1) provides in pertinent part:  "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶]  . . . [¶] There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial

---

[3]     Mother contends that by the time of the jurisdictional hearing, she had completed a domestic violence class, participated in 13 of 26 anger management classes, and attended therapy sessions for a period of two months.  Mother is incorrect as she has cited to evidence that was presented at the later dispositional hearing.

evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

The facts supporting jurisdiction also support removal of the children from mother's physical custody.  As noted, mother was physically and verbally aggressive to maternal relatives and at father's workplace in S.M.'s presence.  Mother was in denial as to her issues, characterizing the allegations as "gossip."  Mother blamed the problems at the maternal family home on maternal aunt and cousin, and not on her own behavior.  Finally, parents had engaged in domestic violence in S.M.'s presence yet mother permitted father to have unfettered access to the children and denied any domestic violence occurred.  (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.'"].)  On this record, a reasonable fact finder could have found it highly probable that there were no reasonable means to protect the children's physical health other than by removal from mother's physical custody.

### 3. Mental Health Counseling and Evaluation

Mother next argues that the juvenile court erred by ordering her, as part of her case plan, to participate in mental health counseling and to submit to a psychiatric evaluation. Mother, however, failed to object to the mental health counseling below. Accordingly, she has forfeited her argument on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) As to the order for a psychiatric evaluation, mother contends that she did not have a mental health diagnosis, her conflict with family members stemmed from her prior living situation, and she had attended therapy sessions for two months. We review challenges to a dispositional order and case plan for an abuse of discretion. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) We reject mother's argument. Even without an established diagnosis, given mother's history of erratic and violent behavior, the court did not abuse its discretion in ordering an evaluation.

### 4. Visitation Order

Mother next contends the juvenile court erred by ordering that her visits with the children be monitored. We review the court's visitation order for abuse of discretion. (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119.)

We find no error. As noted, mother had not yet addressed her mental health issues by the time of the dispositional hearing. She had engaged in verbal and physical abuse directed at maternal relatives, father, and father's supervisor, often in S.M.'s presence. And, maternal relatives were concerned that mother's

10

behavior in front of S.M. was negatively affecting the child, who often cried during these incidents.

### III. DISPOSITION

The jurisdictional findings, dispositional order, case plan, and visitation plan are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

11